UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                      :

STANLEY WOLFSON,

                 Plaintiff,

             -against-

BRUCE MAJOR and MARTIN LICHT,

              Defendants.

-------------------------------------------------------------------- x

       :   Case No. 08-CV-1085 (PKC)(MHD)

       :   ECF

       :   **ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS**

                          :

Defendants Bruce Major and Martin Licht ("Defendants") by their attorneys Robinson & Cole LLP, as and for their Answer to the First Amended Complaint, allege as follows:

1.       Admit upon information and belief, that Plaintiff is a natural person residing in New York and but deny that the other allegations contained in Paragraph "1" of the Complaint fully and accurately reflect the agreement between the parties and respectfully refer all questions of fact and law to the court.

2.       Defendant Bruce Major ("Major") admits the allegation in Paragraph "2" of the Complaint that he is a natural person and admits that he was involved in the purchasing of certain assets of Eatza Pizza, but denies that the remaining allegations fully and accurately reflect the agreement between the parties and respectfully refers all questions of fact and law to the Court regarding the agreement between the parties.

3.       Defendant Martin Licht ("Licht") admits the allegation in Paragraph "3" of the Complaint that he is a natural person and admits that he was involved in the purchasing of certain assets of Eatza Pizza, but denies the remaining allegations regarding Eatza Pizza fully and accurately reflect the agreement between the parties and respectfully refers all questions of

fact and law to the Court regarding the agreement between the parties. Licht also admits that he is a shareholder of Watercolor Holdings Corp. ("Watercolor"), but denies the remaining allegations pertaining to Watercolor in Paragraph "3" of the Complaint.

## NATURE OF THE ACTION

4.     The allegations in Paragraph "4" of the Complaint contain only conclusions of law to which no response is required. To the extent a response is required, defendants deny the allegations contained in Paragraph "4" of the Complaint.

## THE EATZA PIZZA JOINT VENTURE

5.     Deny the allegation contained in Paragraph "5" of the Complaint on the basis that this allegation does not fully and accurately reflects the agreement between the parties, and defendants respectfully refer all questions of fact and law to the Court regarding the agreement between the parties and the allegations contained in Paragraph "5" of the Complaint.

6.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in the first sentence of paragraph "6" of the Complaint. Defendants further deny the allegations contained in the second sentence of Paragraph "6" of the Complaint on the basis that these allegations do not fully and accurately reflect the agreement between the parties, and defendants respectfully refer all questions of fact and law to the Court regarding these allegations. Defendants admit the allegations contained in the third sentence of Paragraph "6" of the Complaint.

7.     Deny the allegations contained in Paragraph "7" of the Complaint on the basis that these allegations do not fully and accurately reflects the agreement between the parties, and defendants respectfully refer all questions of fact and law to the Court regarding the allegations in Paragraph "7" of the Complaint.

8.       Admit that plaintiff initially spoke with Eatza Pizza about a business opportunity and admit that Major was brought on to manage operations of a business contemplated by the parties, but deny the remaining allegations contained in Paragraph "8" of the Complaint, and deny any and all allegations pertaining to the agreement on the basis that these allegations do not fully and accurately reflect the agreement between the parties and defendants respectfully refer all questions of fact and law to the Court regarding the agreement and the remaining allegations contained in Paragraph "8" of the Complaint.

9.       Admit that plaintiff and Licht were to receive 42.5% of the stock in IFA and that Major was to receive 15% of the stock in IFA, but deny the remaining allegations contained in Paragraph "9" of the Complaint, and deny all allegations pertaining to the agreement on the basis that the allegations in Paragraph "9" of the Complaint do not fully and accurately reflect the agreement between the parties, and defendants respectfully refer all questions of fact and law to the Court regarding the agreement and the remaining allegations contained in Paragraph "9" of the Complaint.

10.      Deny the allegations contained in Paragraph "10" of the Complaint.

11.      Admit the allegations contained in Paragraph "11" of the Complaint.

12.      Admit the allegations contained in the first sentence of Paragraph "12" of the Complaint, but deny the allegation contained in the second sentence of Paragraph "12" of the Complaint that IFA did not assume any of Eatza Pizza's liabilities.

13.      Deny the allegations contained in Paragraph "13" of the Complaint.

14.      Deny the allegations contained in Paragraph "14" of the Complaint on the basis that the allegation in Paragraph "14" of the Complaint does not fully and accurately reflect the agreement between the parties and defendants respectfully refer all questions of fact and law to

3

the Court regarding the agreement and the remaining allegations contained in Paragraph "14" of the Complaint.

     15.    Deny the allegations contained in Paragraph "15" of the Complaint.

     16.    Deny the allegation contained in Paragraph "16" of the Complaint on the basis that the allegation in Paragraph "16" of the Complaint does not fully and accurately reflect the agreement between the parties and defendants respectfully refer all questions of fact and law to the Court regarding the agreement and the allegation contained in Paragraph "16" of the Complaint.

     17.    Deny the allegations contained in Paragraph "17" of the Complaint..

     18.    Deny the allegations contained in Paragraph "18" of the Complaint.

### THE WATERCOLOR HOLDINGS TRANSACTION

     19.    Deny the allegations contained in Paragraph "19" of the Complaint.

     20.    Deny the allegations contained in Paragraph "20" of the Complaint.

     21.    Deny the allegations contained in Paragraph "21" of the Complaint.

     22.    Deny the allegations contained in Paragraph "22" of the Complaint.

### AS AND FOR THEIR RESPONSE TO THE FIRST CAUSE OF ACTION
**Judgment Declaring Plaintiff to be the Owner of 42.5% of the Stock in IFA**

     23.    Defendants incorporate by reference paragraphs 1 through 22 above and reallege said paragraphs as if fully set forth and realleged herein.

     24.    Deny the allegation contained in Paragraph "24" of the Complaint on the basis that the allegation does not fully and accurately reflect the agreement between the parties and respectfully refer all questions of fact and law to the Court.

25.     Deny the allegations contained in Paragraph "25" of the Complaint on the basis that the allegations do not fully and accurately reflect the agreement between the parties and respectfully refer all questions of fact and law to the Court.

26.     Deny the allegations contained in Paragraph "26" of the Complaint.

27.     Deny the allegations contained in Paragraph "27" of the Complaint.

### AS AND FOR THEIR RESPONSE TO THE SECOND CAUSE OF ACTION
**Breach of Contract – Specific Performance**

28.     Defendants incorporate by reference paragraphs 1 through 27 above and reallege said paragraphs as if fully set forth and realleged herein.

29.     Deny the allegations contained in Paragraph "29" of the Complaint on the basis that the allegations do not fully and accurately reflect the agreement between the parties and respectfully refer all questions of fact and law to the Court.

30.     Deny the allegations contained in Paragraph "30" of the Complaint.

31.     Deny the allegations contained in Paragraph "31" of the Complaint on the basis that the allegations do not fully and accurately reflect the agreement between the parties and respectfully refer all questions of fact and law to the Court.

32.     Deny the allegations contained in Paragraph "32" of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegation contained in Paragraph "33" of the Complaint.

34.     Deny the allegations contained in Paragraph "34" of the Complaint.

### AS AND FOR THEIR RESPONSE TO THE THIRD CAUSE OF ACTION
**Accounting**

35.     Defendants incorporate by reference paragraphs 1 through 34 above and reallege said paragraphs as if fully set forth and realleged herein.

36.    Deny the allegations contained in Paragraph "36" of the Complaint.

37.    Deny the allegations contained in Paragraph "37" of the Complaint and respectfully refer all questions of fact and law to the Court.

38.    Deny the allegations contained in Paragraph "38" of the Complaint.

## AS AND FOR THEIR RESPONSE TO THE FOURTH CAUSE OF ACTION
### Breach of Contract

39.    Defendants incorporate by reference paragraphs 1 through 38 above and reallege said paragraphs as if fully set forth and realleged herein.

40.    Deny the allegations contained in Paragraph "40" of the Complaint.

41.    Deny the allegations contained in Paragraph "41" of the Complaint.

42.    Deny the allegations contained in Paragraph "42" of the Complaint.

43.    Deny the allegations contained in Paragraph "43" of the Complaint.

44.    Deny the allegations contained in Paragraph "44" of the Complaint.

45.    Deny the allegations contained in Paragraph "45" of the Complaint.

## AS AND FOR THEIR RESPONSE TO THE FIFTH CAUSE OF ACTION
### Mismanagement

46.    Defendants incorporate by reference paragraphs 1 through 45 above and reallege said paragraphs as if fully set forth and realleged herein.

47.    Deny the allegations contained in Paragraph "47" of the Complaint.

48.    Deny the allegations contained in Paragraph "48" of the Complaint.

49.    Deny the allegations contained in Paragraph "49" of the Complaint.

50.    Deny the allegations contained in Paragraph "50" of the Complaint.

## AS AND FOR THEIR RESPONSE TO THE FIFTH CAUSE OF ACTION
### Breach of Contract as to Defendant Licht

51.     Defendants incorporate by reference paragraphs 1 through 50 above and reallege said paragraphs as if fully set forth and realleged herein.

52.     Deny the allegations contained in Paragraph "52" of the Complaint.

53.     Deny the allegations contained in Paragraph "53" of the Complaint.

54.     Deny the allegations contained in Paragraph "54" of the Complaint.

55.     Deny the allegations contained in Paragraph "55" of the Complaint.

## AFFIRMATIVE DEFENSES

1.      Plaintiff fails to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred by the doctrines of waiver, estoppel and laches.

3.      Plaintiff's claims are barred by his failure to mitigate damages.

4.      Plaintiff's claims are barred by the doctrine of unclean hands.

5.      Plaintiff's claims are barred because Plaintiff has suffered no compensable damages.

6.      Plaintiff's claims are barred by his failure to act in accordance with the agreement between the parties.

7.      Plaintiff's claims are barred by his failure to act in good faith.

8.      Plaintiff's claims are barred by the doctrine of unjust enrichment.

9.      Plaintiff's claims are barred by his own prior breaches of the agreement between the parties.

10.     Defendants have fully performed any and all of their obligations.

11.     Plaintiff has failed to join all necessary and indispensable parties to this action.

## COUNTERCLAIMS

As and for their counterclaims against plaintiff Stanley Wolfson, Defendants state and allege as follows:

## PARTIES AND JURISDICTION

1.      Upon information and belief, plaintiff Wolfson is a citizen of the State of New York.

2.      Defendant Licht is a citizen of the State of Connecticut.

3.      Defendant Major is a citizen of the State of Connecticut.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

## FACTS RELEVANT TO ALL COUNTERCLAIMS

5.      Wolfson and Licht have been acquaintances since approximately 1980 and during that time, Wolfson and Licht have invested in various business opportunities together, including the joint ownership of real property.

6.      On or about June of 2006, Wolfson approached Major about operating and marketing a restaurant enterprise. At that time, Wolfson told Major that he owned retail space to open at least 2 locations in the Borough of Manhattan, New York, one in Times Square and one in Harlem, and also advised Major that he had all necessary start-up capital for the enterprise. In exchange, Major was to manage the operation and marketing of the enterprise.

7.      Sometime in 2006, Wolfson approached Licht and asked Licht if he would be interested in investing in a pizza restaurant that Wolfson was considering opening in the Harlem

area of the Borough of Manhattan.  Licht advised Wolfson that he was not interested in pursuing this business opportunity.

8.      Soon thereafter in 2006, Wolfson again approached Licht and sought his interest in opening a pizza restaurant in the Greenwich Village area of Manhattan.  Licht again told Wolfson that he was not interested in pursuing such a business opportunity.

9.      Soon thereafter in 2006, Wolfson approached Licht with the idea of opening several restaurants, including an Eatza Pizza franchise at a location on 42nd Street between 8th and 9th Avenue in Manhattan (the "42nd Street Location").  Wolfson explicitly told Licht that he owned and controlled all portions of the 42nd Street location where he wanted to open the Eatza Pizza restaurant.  Licht again told Wolfson that he was not interested in pursuing such a business opportunity.

10.      Soon thereafter in 2006, Wolfson continued to try and convince Licht to assist him in opening an Eatza Pizza at his 42nd Street location.  In 2006, Wolfson also continued to represent to Licht that he owned the 42nd Street location where he wanted to open the restaurant. In response, Licht advised Wolfson that while he may have the retail space, the only way he would consider contributing to such an enterprise was under the following conditions: (1) that Wolfson secured someone to operate and manage such a business; and (2) that Wolfson raised short-term investment capital necessary to start such a venture.

11.      In response, Wolfson assured Licht that he would find management and also explicitly told Licht that he had already raised $1,000,000 in short-term capital for the purposes of starting this business venture.

12.    At all times referenced herein, Licht advised Wolfson that he would only provide long-term capital support after the business contemplated by Wolfson was up and running. Wolfson agreed to this condition.

13.    At all times referenced herein, Major advised Wolfson that his management and operation of the enterprise was conditioned upon Wolfson having all necessary short-term capital and his representations that he already had two retail locations to start the enterprise.

14.    In September of 2006, Wolfson introduced Licht to Major in Westport, Connecticut. Wolfson represented to Licht that Major would operate and market the restaurant enterprise. Licht was satisfied with Major's credentials and believed that he was qualified to operate and market the enterprise proposed by Wolfson. In exchange for his services, Major was to be provided a 15% ownership interest in the business venture.

15.    Immediately after Major was retained to operate and market the proposed venture, Licht reminded Wolfson that the only way he would open a pizza restaurant at Wolfson's 42nd Street location would be if Wolfson raised any and all short-term capital necessary to open the restaurant. Wolfson assured Licht that he had already raised $1,000,000 in short-term capital.

16.    Thereafter, on or about October of 2006, Eatza Pizza sent a representative named Ron Cordova to meet with Wolfson and Licht regarding opening an Eatza Pizza at Wolfson's 42nd Street location. Licht was unimpressed with Cordova's pitch and advised Wolfson that he was no longer interested in opening an Eatza Pizza at Wolfson's 42nd Street location.

17.    Wolfson persisted and continued to solicit Licht and Major to participate in opening an Eatza Pizza franchise at his 42nd Street location. Eatza Pizza was apparently interested in dealing with Wolfson and on or about December of 2006, sent a representative by

the name with John Earle to meet with Wolfson and Licht at Licht's Offices located at 600 Lexington Avenue, New York, NY.

18.    After that meeting and still in December 2006, Wolfson, Major and Licht had a conference call with John Earle of Eatza Pizza. Based upon a suggestion by Major, Wolfson, Major and Licht inquired as to whether Eatza Pizza would be willing to sell their assets. At that meeting, Mr. Earle advised Wolfson, Major and Licht that they would be interested in selling Eatza Pizza's assets, including its franchise rights.

19.    Upon information and belief, in December of 2006, Wolfson and Major went to Eatza Pizza's headquarters to do due diligence.

20.    Sometime in January of 2007, Wolfson again represented to Licht and Major that he had raised $1,000,000 in short-term capital to do the deal with Eatza Pizza. Additionally, Wolfson continued to represent to Licht and Major that he owned the 42nd Street location. With Wolfson's assurances that he had raised $1,000,000 in short-term capital, Licht and Major requested that Mr. Earle again come to New York to discuss purchasing the assets of Eatza Pizza.

21.    Soon thereafter in January of 2007, Mr. Earle came to New York and went to Wolfson's 42nd Street location with Wolfson and Licht. After looking at Wolfson's 42nd Street location, they were convinced it would be a good location to open an Eatza Pizza and Wolfson, Major and Licht agreed to purchase certain assets of Eatza Pizza. All of this was agreed upon based upon Wolfson's representations to Licht and Major that had raised the necessary short-term capital and that he owned and controlled the 42nd Street location.

22.    In February of 2007, Licht formed International Franchise Associates, Inc. ("IFA") in Delaware for the purpose of purchasing the assets of Eatza Pizza. Major was named President and CEO of IFA.

23.    Based upon Wolfson's assurances, an asset purchase agreement was executed between Eatza Pizza and IFA on March 11, 2007 (the "Asset Purchase Agreement"). In conjunction with the Asset Purchase Agreement, two, two-year convertible promissory notes between in the amount of $560,000 and $150,000 were executed by Eatza Pizza and Major on behalf of IFA. Further thereto, Major retained several employees to assist in the operation and marketing of the enterprise.

24.    The Asset Purchase Agreement also created an obligation upon IFA to assume certain financial obligations of Eatza Pizza.

25.    The $150,000 convertible promissory note was for the purchase of certain Eatza Pizza equipment and fixtures that were housed in an Eatza Pizza storage facility in Arizona.

26.    In exchange for Wolfson's assurances that he owned and controlled the 42nd Street location and that he had raised $1,000,000 in short-term capital, Wolfson was to receive 42.5% of the stock in IFA. Further, Licht was to be issued 42.5% of the stock in IFA for his agreement to raise long-term capital after Wolfson had raised the short-term capital. Major was issued the remaining 15% of IFA's stock for his operation and marketing of the enterprise.

27.    Soon after the Asset Purchase Agreement was executed, Wolfson advised Licht and Major that in addition to the $1,000,000 in short-term capital he had already raised, Wolfson was seeking additional funds from third-parties for purposes of using the assets purchased from Eatza Pizza. In that regard, Wolfson advised Licht and Major that he had found a group of four people who were willing to invest $150,000 as start-up capital for the 42nd Street location.

28.    Specifically, Wolfson advised Licht and Major that 4 people were willing to invest $150,000 each. Those people were: Dori Ann Hainesworth, Robert Friedman, Bernard Friedman and Martin Goodstein (collectively the "investors"). Licht drew up partnership agreements to send to the investors. However, none of the investors ever executed a partnership agreement and no funds were ever received from the investors.

29.    Soon thereafter, Licht and Major met two of the investors, Robert Friedman and Bernard Friedman. When discussing the 42nd Street location, Licht learned one startling and shocking revelation from the Friedmans: that the Friedmans owned and controlled the 42nd Street location and Wolfson had absolutely no ownership interest, leasehold interest or any other relevant interest in the 42nd Street location.

30.    Licht and Major approached Wolfson about what he had learned in his and Major's meeting with the Friedmans. After being confronted with the Friedmans' statement that they owned the 42nd Street location, Wolfson admitted that he did not own or control any portion of the 42nd Street location.

31.    Additionally, at that time, Wolfson advised Licht and Major of another startling and shocking revelation: that Wolfson had not raised any of the short-term capital he represented that he had raised. In fact, despite the parties' agreement, Wolfson failed to raise any money at any time prior to or after execution of the Asset Purchase Agreement.

32.    Thus, despite the agreement between Wolfson, Licht and Major and despite Wolfson's representations, Wolfson in fact:

- Did not own the 42nd Street location;

- Did not control all or any portions of the 42nd Street location; and

- Did not raise a single dollar in short-term investment capital to use the assets purchased from Eatza Pizza.

33.    In an effort of good-faith and based upon the fact that Licht and Major had expended a great deal of time and money to open an Eatza Pizza restaurant in the Times Square area of Manhattan, they attempted without success to find space across the street from the 42nd Street location.

34.    In that regard, Licht and Major contacted Kenneth Hochhauser, a commercial real estate broker with Newmark Knight & Frank that was listing the commercial space across the street from the 42nd Street location. Mr. Hochhauser advised them that a gentleman, who later turned out to be Wolfson, had represented himself under a false name as a broker who was retained by Eatza Pizza for purposes of leasing the space across the street from the 42nd Street location. Upon information and belief, Wolfson did so with the intention of receiving a co-broker fee for Eatza Pizza's leasing of this alternative location. Licht and Major were shocked upon learning about this and after this information was conveyed to Mr. Hochhauser, he quite naturally did not want to do business with Wolfson, Major and Licht.

35.    Additionally, sometime in March or April of, 2007, Wolfson, without the express or implied permission of Licht, Major or IFA, retained a number of trailers to bring the equipment and fixtures purchased in the Asset Purchase Agreement from Arizona to a storage facility in Bridgeport, Connecticut.

36.    Only after Wolfson had started to move aforementioned fixtures and equipment to Bridgeport, did he advise Licht and Major of his actions. Further, soon thereafter, Wolfson changed the locks on the storage unit where the fixtures and equipment were kept and refused access to Licht and Major.

14

## FIRST COUNTERCLAIM
### (Breach of Contract)

37.    Defendants incorporate by reference paragraphs 1 through 36 above and reallege said paragraphs as if fully set forth and realleged herein as part of the First Counterclaim

38.    Licht and Major complied with all material provisions of their agreement with Wolfson.

39.    Wolfson materially breached the agreement because he did not own or control the 42nd Street location.

40.    Wolfson materially breached the agreement when he failed to raise short-term capital.

41.    As a result of Wolfson's material breaches of contract, Licht and Major have expended in excess of $600,000 of their own money to amongst other things, hire employees to run the business of IFA, bring about the opening of Eatza Pizza at the 42nd Street location and to use the other assets purchased by IFA in accordance with the Asset Purchase Agreement.

42.    As a further result of Wolfson's material breaches of contract, Licht and Major have been damaged in amount to be determined.

43.    Wolfson's material breaches of contract have directly and proximately caused Major and Licht substantial damages in an amount of at least $600,000. In addition, Licht and Major seek recovery of interest.

## SECOND COUNTERCLAIM
### (Fraudulent Inducement)

44.    Defendants incorporate by reference paragraphs 1 through 43 above and reallege said paragraphs as if fully set forth and realleged herein as part of the Second Counterclaim.

15

45.     Licht and Major engaged in numerous discussions with Wolfson prior to entering into the agreement whereupon Wolfson represented that he owned and controlled the 42nd Street location and that he had raised at least $1,000,000 in start-up capital.

46.     Wolfson was aware that Licht and Major viewed Wolfson's ownership of the 42nd Street location to be central to any agreement between the parties.

47.     Wolfson was also aware that Licht and Major viewed Wolfson's raising of the start-up capital be central to any agreement between the parties

48.     In order to induce Licht and Major to enter into an agreement with him, Wolfson represented that he at all times owned and controlled the 42nd Street location and that he had raised $1,000,000 in start-up capital.

49.     For example, from the second time that Wolfson met with Licht in 2006, he misrepresented two present facts to Licht, to wit, his ownership and control of the 42nd Street location and his possession of $1,000,000 in start-up capital.

50.     As another example, from the first time Wolfson met with Major in June of 2006, he misrepresented the same two present facts to Major, to wit, his ownership and control of the 42nd Street location and his possession of $1,000,000 in start-up capital.

51.     Similarly at all times prior to the parties' agreement, Wolfson continued to represent to Licht and Major that he owned and controlled the 42nd Street location and that he had raised $1,000,000 in start-up capital.

52.     Wolfson knew that his representations of ownership and control of the 42nd Street location and his possession of the start-up capital were material to Licht and Major entering into the agreement.

53.    Wolfson knew that his representations that he owned and controlled the 42nd Street location and that he had raised $1,000,000 in start-up capital were false.

54.    In reliance upon Wolfson's representations that he owned and controlled the 42nd Street location and that Wolfson had raised $1,000,000 in start-up capital, Licht and Major entered into an agreement with Wolfson.

55.    Without the representation from Wolfson that he owned the 42nd Street location, Licht and Major would not have entered into an agreement with Wolfson, would not have entered into the Asset Purchase Agreement and would not have retained employees to help operate IFA.

56.    Without the representation from Wolfson that he had raised at $1,000,000 in start-up capital, Licht and Major would not have entered into an agreement with Wolfson, would not have entered into the Asset Purchase Agreement and would not have retained employees to help operate IFA.

57.    Sometime after March 11, 2007, Licht and Major learned from the Friedmans that Wolfson did not own or control the 42nd Street location and also learned that Wolfson had not raised any of the start-up capital he claimed to have raised.

58.    As a direct and proximate result of being induced into an agreement under false pretenses, Licht and Major have been damaged in an amount to be determined, but in excess of $75,000, seek recovery for attorneys' fees and recovery of punitive damages and interest.

**WHEREFORE,** Defendants demand judgment as follows:

I.    Dismissing the Plaintiff's Complaint in its entirety;

II.    On the first counterclaim, an award of damages to the Defendants in an amount to be determined at trial, but in excess of $600,000, including interest;

III.    On the second counterclaim, damages in favor of the Defendants in an amount to

be determined at trial, but in excess of $75,000, including punitive damages,

attorneys fees and interest;

IV.    The costs and disbursements of this action; and

V.    Such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
      June 10, 2008

ROBINSON & COLE LLP

BY: _____
      Joseph L. Clasen (JC-1759)
      David E. Ross (DR-1513)
*Attorneys for Defendants*
885 Third Avenue, Suite 2800
New York, New York 10022
Tel. No.: (212) 451-2900

## CERTIFICATE OF SERVICE

I, David E. Ross, hereby certify that on this 10th day of June, 2008, I served a true copy of the foregoing Defendants' ANSWER TO FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS, via ECF and regular mail, postage pre-paid, upon the following:

Roger Juan Maldonado, Esq.
Balber Pickard Maldonado & Van Der Tuin, P.C.
*Attorneys for Plaintiff*
1370 Avenue of the Americas
New York, New York  10019
Tel. No.:  (212) 246-2400

_____
David E. Ross